```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HELEN E. HENDERSON, et al.     :     CIVIL ACTION
                               :
     V.                        :
                               :
JUSTIN MATTHEWS, et al.        :     NO. 19-3040
```

MEMORANDUM

Bartle, J.                                      April 29, 2020

      Plaintiffs Helen Henderson and Ramil Hughes bring this action under 42 U.S.C. § 1983 against Philadelphia Police Officers Justin Matthews, Marcus Baker, former Philadelphia Police Officer Brandon Pinkston, and the City of Philadelphia ("City") for violations of their rights under the First, Fourth, Eighth, and Fourteenth Amendments. Before the court is the motion of the City to dismiss plaintiffs' claim for municipal liability pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that plaintiff has failed to state a claim for relief.

I

      A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). Detailed factual allegations are not required. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

When deciding a Rule 12(b)(6) motion, the court must accept as true all factual allegations in the complaint and draw all inferences in the light most favorable to the plaintiff. See Phillips v. Cty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008); Umland v. PLANCO Fin. Servs., Inc., 542 F.3d 59, 64 (3d Cir. 2008).  We must then determine whether the pleading at issue "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (quoting Twombly, 550 U.S. at 570).  A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  Id.  Under this standard, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The court is not required to accept the truth of conclusory statements that are unsupported by factual allegations.  Iqbal, 556 U.S. at 686.  Determining whether a complaint has raised a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.

II

The factual allegations in the complaint are taken as true for present purposes.  On February 10, 2018 at 3:45 a.m.,

-2-

plaintiff Helen Henderson called the Philadelphia Police Department from her home to request that police remove Alisha Henderson. Police Officers Matthews and Baker answered the call and ordered Alisha Henderson to leave. Roughly 40 minutes later, Alisha Henderson returned. She was intoxicated and started violently to beat and choke Helen Henderson. Alisha Henderson was much bigger and stronger than Helen Henderson, who, fearing for her life, grabbed a nearby wine bottle and struck Alisha Henderson on the head. The blow caused her head to bleed.

Helen Henderson called the police again to report the incident. She requested that officers order Alisha Henderson to leave her home a second time. As previously, Police Officers Matthews and Baker were sent to the residence. This time they were accompanied by Officer Pinkston. The officers encountered Helen and Alisha Henderson and plaintiff Ramil Hughes when they arrived.

The officers handcuffed Mr. Hughes soon after their arrival. However, after calming down, Mr. Hughes's handcuffs were removed, and he told the officers that Helen Henderson hit Alisha Henderson over the head with a wine bottle. Helen Henderson explained to the officers that Alisha Henderson attacked first. Without inquiring into the truth of this

explanation, the officers informed Helen Henderson that she was under arrest.

Helen Henderson alleges that without handcuffing her, the officers grabbed her by the arms and hand and forced her forward. They used so much unnecessary force that they caused her to fall on stairs, fracture her foot, and injure her back. Because she was unable to walk after the fall, she "had to be carried back where she was handcuffed and then to the police car by Philadelphia police officers."[1]

Helen Henderson alleges that there was probable cause for the officers to arrest Alisha Henderson. She contends that the officers and other unidentified City employees exercised their discretion to arrest and charge her in order to intimidate her into not filing a civil rights suit for her injury and to retaliate against her for complaining about them arresting her and not Alisha Henderson. Officer Baker handcuffed Mr. Hughes a second time after he saw the officers cause Helen Henderson to fall. Mr. Hughes claims that this was done without probable cause in order to intimidate him.

Plaintiffs allege that no one investigated the use of excessive force by Officers Matthews, Baker, and Pinkston at the scene. They assert the officers agreed not to testify against

---

1. She was treated later with a cast and boot.

one another, did not file truthful or complete reports, and lied under oath about the incident. Plaintiffs also allege that none of these officers was disciplined as a result of the incident.

According to the complaint, the conduct of Officers Matthews, Baker, and Pinkston is the consequence of a City "policy and custom" to cover up the use of excessive force by its police officers. Specifically, plaintiffs allege the City does not require the police to investigate serious injuries which result from police interaction and does not properly discipline officers who use excessive force. Further, the City does not ban an agreement among police not to report or testify against one another, nor does it ban retaliation against officers who do. The City does not require truthful reports on the use of force and does not act when police lie under oath. Finally, plaintiffs allege the City permits intimidation by giving police officers the discretion to arrest those they injure without requiring an investigation into any excessive force.

### III

The City moves to dismiss plaintiffs' claim for municipal liability on the grounds that plaintiffs plead no facts regarding a municipal policy or custom. The City also argues plaintiffs' municipal liability claim fails because they allege no conduct by a municipal decisionmaker.

A municipality may not be held liable under 42 U.S.C § 1983 for the constitutional misconduct of its employees under a theory of respondeat superior. Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691 (1978). As the Supreme Court explained in Monell, a government entity may only be held liable for unconstitutional conduct when the injury alleged results from the execution of a government policy or custom. Id. at 694-95. Such a policy or custom may be made by "lawmakers or by those whose edicts or acts may fairly be said to represent official policy." Id. Thus, a government entity can be liable for constitutional injuries only when they result from the implementation or execution of an official policy, regulation, or decision adopted by it or informally adopted by custom. McTernan v. City of York, 564 F.3d 636, 657-58 (3d Cir. 2009). This creates a "two-track path" to municipal liability whereby a plaintiff may establish that his or her injury resulted from either an officially adopted policy or an informally adopted custom. Id.

A plaintiff can establish an official policy by showing that a decisionmaker, who possessed final policymaking authority, issued an official municipal proclamation, policy, or edict. McTernan, 564 F.3d at 658. Alternatively, a plaintiff can establish a custom by showing that a course of conduct is so

permanent and well-settled as to virtually constitute law.  See id.

Thus, municipal liability rests on the policymaker's affirmative act of adopting an unconstitutional policy.  See McTernan, 564 F.3d at 658.  Under these circumstances, a single incident of unconstitutional conduct may be sufficient to link a plaintiff's injury to a government defendant.  City of Okla. v. Tuttle, 471 U.S. 808, 822-24 (1985).

In the case of a custom, liability is premised on the municipal decisionmaker's failure to address pervasive unconstitutional conduct despite having knowledge of its existence.  See McTernan, 564 F.3d at 658.  The Supreme Court has warned of the dangers of inferring the existence of a custom from a single incident of unconstitutional misconduct because "[s]uch an approach provides a means for circumventing Monell's limitations altogether."  Tuttle, 471 U.S. at 823-24.

Dismissal for failure to state a claim for municipal liability is appropriate where a complaint fails to either connect a policy or custom to a municipal decisionmaker or to show prior notice through a pattern of similar unconstitutional conduct.  Wood v. Williams, 568 F.App'x 100, 105-06 (3d Cir. 2014).  Such pleading is necessary "to satisfy the rigorous standards of culpability and causation" required for municipal

liability.  Wood, 568 F. App'x at 104; McTernan, 564 F.3d at 658.

Here, the complaint does not state whether plaintiffs' constitutional injuries resulted from an officially adopted policy or an informally adopted custom.  We consider therefore whether either may be plausibly inferred from the factual allegations in the complaint.

Taken as a whole, Helen Henderson generally alleges that the use of excessive force by Officers Matthews, Baker, and Pinkston injured her and that the officers, along with other unidentified City employees, exercised their discretion to arrest and charge her in order to intimidate her into not filing suit and to retaliate against her for complaining about the officers' decision to arrest her and not Alisha Henderson. Ramil Hughes alleges Officer Baker handcuffed him a second time as a means of intimidation after he witnessed the excessive force.

Plaintiffs seek to connect the conduct of Officers Matthews, Baker, and Pinkston to the City with the conclusory allegation that the City has a policy of covering up excessive force.  The complaint does not identify any City policymaker and makes only a passing reference to unidentified City employees. Plaintiffs also do not identify any policy which adopts a practice of excessive force, nor one so deficient as to suggest

a goal of permitting the cover up of excessive force.  Finally, the complaint contains only a single incident of constitutional misconduct.

The court cannot accept plaintiffs' conclusory allegation that the City has a policy of covering up excessive force in the absence of these crucial supporting factual allegations.  See Iqbal, 556 U.S. at 686.  Moreover, we cannot infer a permanent and well-settled custom to use and cover up excessive force from a single alleged constitutional transgression.  See Wood, 568 F.App'x at 105-06.

The complaint also fails to the extent plaintiffs allege Officers Matthews, Baker, and Pinkston, or other unidentified City employees had final policymaking authority with respect to their discretion to arrest and charge Helen Henderson or to handcuff Ramil Hughes a second time.  The fact that a particular official has discretion in the exercise of certain government functions does not by itself give rise to municipal liability based on the exercise of that discretion. Pembaur v. City of Cincinnati, 475 U.S. 469, 481–83 (1986).  The official must be responsible for establishing government policy as it relates to the alleged unconstitutional activity.  Id. Plaintiffs do not state a plausible claim against the City.

For these reasons, we will grant the motion of the City of Philadelphia to dismiss all claims against it.